UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LAWRENCE MAURICE REEVES, JR., ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | Nos: 3:06-cr-011 <br> 3:08-cv-007 <br> *Judge Jordan* |

## **MEMORANDUM**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Lawrence Maurice Reeves, Jr. ("petitioner"). The government has filed its response to the motion and petitioner has filed his reply. For the following reasons, the § 2255 motion to vacate will be **DENIED** and this action will be **DISMISSED**. Petitioner's motions for an evidentiary hearing [Court File No. 53] and to dismiss his conviction [Court File No. 55] will be **DENIED** as **MOOT**.

I.      Standard of Review

This court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.     Factual Background

Petitioner was convicted by a jury of all counts of a five-count superseding indictment, which charged him with the following: possession with intent to distribute five grams or more of cocaine base ("crack"), in violation of 21 U.S.C. § 941(a) (count one); using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (count two); carjacking, in violation of 18 U.S.C. § 2119 (count three);

using, carrying and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (count four); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [Criminal Action No. 3:06-cr-11, Court File No. 20, Superseding Indictment].

The Presentence Report summarized the evidence against petitioner as follows:

On January 20, 2006, [Special Agent David] Bukowski [of the Federal Bureau of Investigation] and [Task Force Officer K. Todd] Gilreath observed Lawrence Maurice Reeves driving a 1988 Oldsmobile Delta 88 west bound on Martin Luther King Boulevard in Knoxville, Tennessee, when the defendant crossed the center line and struck another vehicle. The defendant initially exited his vehicle, but then reentered the front driver side and retrieved some items. These items were later determined to be a Glock (Model 31, serial number EWU010US) .357 semi-automatic pistol and a large amount of cocaine base (later determined to be 23.2 grams).

After retrieving the firearm and cocaine base, the defendant then fled the accident scene on foot, and ran to the nearby parking lot of the Bi-Lo market, located at 2700 Martin Luther King Boulevard in Knoxville, Tennessee. Mr. Reeves approached a vehicle in the Bi-Lo parking lot and jumped into the front passenger seat. Defendant Reeves ordered the driver, Dewayne Smith, to drive away from the scene. The vehicle was also occupied by Marian Leverette, who was sitting in the rear seat of the vehicle, and was an innocent passenger.

SA Bukowski and TFO Gilreath identified themselves and pursued defendant Reeves on foot until he got into Mr. Smith's vehicle and fled. SA Bukowski and TFO Gilreath then got back into their vehicle and pursued defendant Reeves, with the assistance of marked Knoxville Police Department vehicles. After a short pursuit, Mr. Smith stopped the vehicle and Mr. Reeves attempted to flee on foot. As the defendant attempted to exit the vehicle, his clothing got caught on the doorpost. TFO Gilreath was able to grab the defendant, wrestle him to the ground, and ultimately take him into custody. Upon searching the vehicle, SA Bukowski recovered approximately 27.5 grams (gross weight) under the passenger seat, and the Glock pistol that Reeves threw into the back seat of the vehicle prior to the pursuit ending. The Tennessee Bureau of Investigation Knoxville Crime Laboratory later determined that the actual weight of the cocaine base was 23.2 grams.

> Both witnesses testified that the defendant entered the vehicle without permission and ordered Mr. Smith to drive while stating that he had a gun. In addition, the witnesses testified that while fleeing the scene, defendant Reeves tossed the handgun into the back seat and was observed placing something underneath the front passenger seat. Furthermore, the witnesses testified that the defendant also threw a silver handgun out of the vehicle while being pursued by law enforcement; however, this act was not seen by law enforcement, and the firearm was not recovered.

[*Id.*, Presentence Investigation Report, pp. 5-6, ¶¶ 14-17]

Petitioner was sentenced to concurrent terms of imprisonment of 121 months on counts one and three, a concurrent term of imprisonment of 120 months on count five, a consecutive term of imprisonment of 60 months on count two, and a consecutive term of imprisonment of 300 months on count four, for a total effective term of imprisonment of 481 months. [*Id.*, Court File No. 39, Judgment]. Petitioner filed a notice of appeal, which he subsequently moved to dismiss; the Sixth Circuit granted the motion and dismissed the appeal. *United States v. Reeves*, No. 06-6371 (6th Cir. March 1, 2007). [*Id.*, Court File No. 43, Order].

As a result of Amendment 706 to the sentencing guidelines, petitioner's sentence was subsequently reduced to 480 months. In support of his § 2255 motion, petitioner alleges multiple instances of ineffective assistance of counsel.

III.  Discussion

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

5

As noted, petitioner alleges multiple instances of ineffective assistance of counsel, enumerated in 102 paragraphs. The court will considered the claims, as consolidated by the court, in turn.

**1.    Failure to obtain evidence in the form of cellular telephones.**

Petitioner first alleges that trial counsel failed to obtain evidence that was seized on the day of his arrest, including two cellular telephones, and failed to obtain records linked to the two cellular telephones. Petitioner claims that the telephones or the records would have revealed that the car jacking victim, Dewayne Smith (Smith), had called him earlier in the day and on previous days, thus impeaching Smith's trial testimony that he did not know petitioner prior to the incident.

In support of its response to the § 2255 motion, the government has attached the affidavit of petitioner's trial counsel, Brian Hunt (Hunt). [Court File No. 51, Response, Attachment 1, Affidavit of Brian J. Hunt]. With respect to this claim, Hunt testifies that he "discussed with defendant the cell phone issue on several occasions." [*Id*. at 1, ¶ 2]. Hunt further testifies:

> The two cell phones were listed under two different aliases, namely Joe Simms and Shanna Smith and not in defendant's name which in trial counsel's experience would not be obtainable by subpoena and perhaps raise negative inferences for client at trial e.e. the lifestyle and habits of a drug dealer.

[*Id*.].

Hunt's decision with respect to the cellular telephones was a matter of trial strategy which this court will not second-guess. Petitioner is not entitled to relief on this claim.

6

2. **Failure to obtain evidence in the form of a videotape and failure to object to the use at trial of a still photograph taken from the videotape.**

Petitioner alleges that the government used a still photograph (Exhibit #9) taken from a Knoxville Police Department (KPD) cruiser videotape that was not produced to trial counsel. He also alleges that counsel failed to obtain the videotape and failed to object to the introduction of the still photograph. To the contrary, Hunt testifies that "[t]he Government had produced a video of the arrest to counsel a day or two before trial." [*Id.*, ¶ 3]. Hunt further testifies that he "did not find it prudent to object to introduction of Exhibit #9 for the sole reason that it provided a 'better angle' of the arrest." [*Id.*].

Again, this was trial strategy which the court will not second-guess. Petitioner is not entitled to relief on this claim.

3. **Failure to introduce into evidence another videotape.**

Petitioner alleges that trial counsel failed to introduce into evidence a KPD cruiser videotape that showed drugs falling from the pant leg of Smith, when Smith was pulled from the vehicle and searched. Petitioner claims that the videotape, together with the fact that Smith admitted to smoking crack in the past and the fact that an officer found a crack rock laying on the road next to Smith's vehicle, would have called Smith's veracity into question and shown it was Smith who actually possessed the drugs found in the vehicle. Petitioner further claims that trial counsel failed to cross-examine the government's witnesses about the drugs falling from Smith's pant leg.

Hunt testifies that "it was unclear from the video what fell from the pant leg of witness Smith and it was speculative as to what is could have been." [*Id*. at 2, ¶ 4]. For that reason, Hunt decided "to not play the video for the jury because it contained no exculpatory content for defendant and it posed the potential to adversely affect defendant's presumption of innocence in the eyes of the jury from the jury viewing Mr. Reeve's arrest on the video." [*Id*.]. Hunt further testifies that it was his "understanding from cross-examination of Officer Gilreath that witness Smith was not charged with possession of any contraband from the traffic stop nor was evidence recovered from him." [*Id*.]. The trial transcript supports this statement. [Court File No. 42, Transcript of Proceedings, p. 60].

Once again, the court will not second-guess counsel's trial strategy. Petitioner is not entitled to relief on this claim.

**4.     Failure to adequately investigate the case.**

Petitioner alleges that trial counsel failed to conduct a reasonable investigation, did not attempt to obtain witnesses who could testify that petitioner and Smith knew one another, and did not attempt to speak with the government's witnesses. Petitioner also alleges that counsel failed to interview petitioner's girlfriend, Leslie Brody, who would have testified as to his character and that she had never seen him with a gun. Petitioner further alleges that he gave his attorney the names of two witnesses, Shana Jack and Kim Walker, both of whom were willing to testify, but his attorney never contacted them. Petitioner complains that counsel failed to call a single witness on his behalf, including character witnesses.

Hunt denies that he failed to adequately investigate petitioner's case.

> Counsel would show that he retained a private investigator Jim Murray of Murray Investigative Services who met with defendant where defendant had ample opportunity to provide names of potential witnesses to call for his defense. This investigator, along with trial counsel did a thorough and [sic] investigation into the facts of defendant's case. This investigation was independent of work done by Mr. Reeves' two prior attorneys and investigators. Investigator Murray attempted to contact witness Smith who did not return his calls. Investigator Murray also talked with other individuals to track down other leads that ultimately did not prove anything useful in defendant's defense. Counsel and Investigator Murray made exhaustive attempts to locate any other witnesses who might have knowledge of the facts of the case and talked with defendant to see if he could provide any names of potential individuals of interest. Unfortunately, none were discovered and defendant did not provide any other potential witnesses. To the best of counsel's recollection and review of his notes, defendant could not identify the last name of his girlfriend Leslie or provide counsel with a phone number for her. Further counsel has never heard of Shana Jack or Kim Walker and counsel denies that defendant ever produced their names much less their contact information. Counsel met with defendant on multiple occasions in preparing for trial allowing defendant amply access to this attorney so that he could provide information.

[Court File No. 51, Attachment 1, Affidavit of Brian J. Hunt, pp. 2-3, ¶ 5].

Hunt's testimony belies petitioner's claim that counsel failed to adequately investigate the case. Petitioner is not entitled to relief on this claim.

**5.      Failure to allow petitioner to testify.**

Petitioner alleges that counsel did not allow him to testify in his own defense, despite his request to do so. Petitioner also alleges that counsel threatened petitioner that he could try the case by himself if he insisted on testifying; that the attorney/client relationship broke down at that point and counsel refused to speak with him after that; and that the tension between them was so great the U.S. Marshals placed petitioner in electric restraints to prevent him from attacking his attorney. Petitioner further alleges that his waiver of the right

9

to testify was not placed on the record and the waiver should not be presumed from a silent record.

Again, Hunt denies petitioner's allegations.

> [C]ounsel denies that he prohibited defendant from testifying in his own defense. Going into trial, it was counsel's understanding from defendant that defendant would not testify. During a recess after the government's case in chief, counsel met with defendant when defendant brought up testifying so that he could play the videotape of his arrest. Counsel strongly advised defendant to not testify because defendant would have been seriously discredited on cross examination through 609 impeachment due to having a prior felony drug conviction. This drug conviction had been successfully excluded from being introduced by the court's favorable ruling to defendant's motion in limine. Counsel denies that he ever told defendant he could conduct the trial by himself if he insisted on testifying or that the client/attorney relationship broke down or that he refused to speak with defendant. The meeting between counsel and defendant ended because the recess had ended. When defendant was brought back into the courtroom counsel asked rather [sic] he wished to testify and he declined. The fact that defendant did not want to testify or put forth any other proof was noted on the record. It was counsel's understanding that electrified restraints were put on defendant due to defendant trying to fight the U.S. marshals.

[*Id*. at 3, ¶ 4 (citation to the trial transcript omitted)].

Petitioner's affidavit is attached to his reply to the government's response. [Court File No. 52, Reply, Attachment 1, Affidavit of Lawrence Reeves]. Petitioner reiterates his allegations that he wanted to testify, that Hunt threatened to quit the case if he did, and that the U.S. Marshals put a shocker on petitioner to prevent him from harming his lawyer. [*Id*. at 1].

"[A] criminal defendant has a fundamental constitutional right to testify on his own behalf." *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir. 1997) (citing *Rock v. Arkansas*, 483

U.S. 44, 51-53 (1987)). Petitioner claims that Hunt prevented him from testifying. Hunt states that he strongly advised petitioner not to testify and that petitioner then declined to testify. The court finds Hunt to be the more credible on this issue. There is nothing in the record, other than petitioner's self-servings statements, to suggest that Hunt would not allow petitioner to testify.

In addition, petitioner's contention that the waiver of his right to testify should not be presumed from a silent record lacks merit. At the conclusion of the government's proof, and after the court denied petitioner's motion for judgment of acquittal, the following colloquy took place in the presence of the jury:

> MR. HUNT: Your Honor, after speaking with my client, the defense has no proof to put on.
>
> THE COURT: Very well, thank you.

[Court File No. 42, Transcript of Proceedings, p. 200]. There was no need for the court to inquire into petitioner's decision to not testify.

> Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed.... Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record.
>
> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. At base, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.

11

*United States v. Webber*, 208 F.3d 245, 551 (6th Cir. 2000) (quoting *Pelzer v. United States*, 1997 WL 12125 at *2 (6th Cir. Jan. 13, 1997) (unpublished decision), other citations omitted). Petitioner is not entitled to relief on this claim.

**6.     Failure to move for mistrial.**

Petitioner alleges that counsel failed to object and move for a mistrial after KPD officer Todd Gilreath (Gilreath) testified that he was assigned to the Organized Crime Unit at the time of his testimony and that the neighborhood where petitioner was arrested was a high crime area. Petitioner claims this background testimony, coupled with Gilreath's testimony that he had dealt with petitioner in the past, was meant to associate petitioner with organized crime, guns, and drugs.

Officer Gilreath was the government's first witness. By way of background, he was asked on direct examination to describe his duties with the Knoxville Police Department and he stated that he was "assigned to the Knoxville Police Department Criminal Investigation Division and attached to the Organized Crime Unit." [Court File No. 42, Transcript of Proceedings, p. 16]. He also explained that he was "assigned as a Federal Task Force Officer" and on a day-to-day basis he investigated "violent crimes that can be prosecuted in Federal Court, drug crimes, gang related activities, things of this nature." [*Id*.]. When asked what he was doing on the date of petitioner's arrest, Officer Gilreath testified that he was riding around the "inner-city part of Knoxville" with an FBI agent because it was "a high crime area." [*Id*. at 17].

This sort of background information is elicited on direct examination as a routine manner and the court sees no reason for counsel to have objected to the testimony. In

12

addition, there is nothing in the record to suggest that the outcome of the proceedings would have been different had counsel successfully objected to the Officer Gilreath's testimony. Petitioner is not entitled to relief on this claim.

7. **Trial counsel's prejudicial remarks about petitioner in opening and closing statements.**

Petitioner alleges that trial counsel made prejudicial remarks about petitioner during his opening and closing statements, such as referring to petitioner as a convicted felon. The parties stipulated that petitioner was a convicted felon. [*Id*. at 198]. Thus any reference to that effect was not error. Petitioner is not entitled to relief on this claim.

8. **Failure to impeach government witnesses.**

Petitioner alleges that trial counsel failed to impeach Smith and the passenger in the vehicle, Marian Leverette (Leverette), as to the inconsistencies between their trial testimony and their initial statements given to law enforcement. For examples, petitioner claims the following: in her initial interview, Leverette stated that Smith said "come on" when asked for a ride by petitioner but testified as to just the opposite; Leverette did not mention in her initial interview that she saw petitioner with a gun or that she saw petitioner threaten Smith with a gun but she testified she saw petitioner point a gun at Smith; in her initial interview Leverette did not mention seeing petitioner stuffing items under the seats in the vehicle but testified at trial that he did so.

The written notes of Smith's and Leverette's initial statements to law enforcement are not a part of the record, and there is nothing in the record to support petitioner's claim of inconsistencies between those statements and the witnesses' trial testimony. In addition,

petitioner does not allege that the witnesses adopted the agent's interview notes as their statements and thus any impeachment value would have been minimal. Petitioner is not entitled to relief on this claim.

9. **Failure to object to prosecutorial misconduct.**

Petitioner alleges that trial counsel failed to object to several instances of prosecutorial misconduct during the government's opening and closing arguments, and failed to move for a mistrial based upon the misconduct. According to petitioner, the prosecutors vouched for the credibility of their witnesses, expressed his or her personal opinion as to petitioner's guilt, and made inflammatory emotional appeals to the jury. Petitioner specifically mentions the government's reference to the testimony of Dave Lewis that the quantity of cocaine meant it was for distribution; the statement that it was horrible what was done to Smith and Leverette; the reference to Leverette's testimony as the hallmark of credibility; the government asking the jury to do its job and make petitioner take responsibility for his actions; and the government's references to petitioner as a coward, a convicted felon, and a gun toting crack dealer. Petitioner also complains that the government stated that Smith was forced to drive at gun-point, but that Smith did not testify that petitioner pointed a gun at him.

The latter claim is contradicted in the record. Smith testified that when petitioner got into his car, Smith saw two guns in petitioner's possession. [Court File No. 42, Transcript of Proceedings, p. 84]. Smith further testified that when petitioner got into the car, he told Smith to drive and pulled out a gun. [*Id*. at 100].

As previously noted, the parties stipulated that petitioner was a convicted felon. Accordingly, any reference to him by the government as a felon was not improper.

14

With respect to the allegations that the government vouched for its witnesses and that the prosecutors expressed their opinions as to petitioner's guilt, that claim lacks merit. In *United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994), the Sixth Circuit constructed a framework for reviewing claims of prosecutorial misconduct. In a later case, the court succinctly explained the framework of Carroll as follows:

> First, the court should determine if the prosecutor's statements were improper. Then, if the statements were improper, the court must determine if the impropriety was flagrant. To determine flagrancy, the court should consider four factors:
>
> (1) whether the remarks tended to mislead the jury or to prejudice the accused [including whether the trial judge gave an appropriate cautionary instruction to the jury];
>
> (2) whether they were isolated or extensive;
>
> (3) whether they were deliberately or accidentally placed before the jury; and
>
> (4) the strength of the evidence against the accused.

*United States v. Cobleigh*, 75 F.3d 242, 247 (6th Cir. 1996) (citations omitted).

The court has reviewed the arguments of the prosecutors, both in closing and rebuttal. [Court File No. 42, Transcript of Proceedings, pp. 201-212, 219-227]. The arguments of the government were not improper, let alone flagrant statements. For the most part, the government summed up the evidence presented by the witnesses' testimony. To the extent one of the prosecutors may be said to have expressed an opinion on the credibility of witnesses or on petitioner's guilt, it was prefaced by the statement "I submit to you." [*Id*. at 226]. Use of the phrase "I submit" is not an improper vouching for a witness. *See United*

*States v. Covington*, 7 F. App'x 386, 390 (6th Cir. 2001). Petitioner is not entitled to relief on this claim.

**10. Cumulative error.**

Petitioner alleges that he received ineffective assistance based upon the cumulative aforementioned errors of counsel. The Sixth Circuit has held that, regardless of whether each of a petitioner's alleged errors, standing alone, would require a finding of deprivation of due process, a court may look to whether the cumulative effect of the errors was such that the petitioner was denied fundamental fairness. *See, e.g., Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983).

Petitioner has not demonstrated error on the part of trial counsel, however, and is not entitled to relief on this claim. *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) ("[Petitioner's] cumulative-error claim therefore fails because there are simply no errors to cumulate.").

Based upon the foregoing, petitioner has failed to demonstrate that he received ineffective assistance of counsel under the standard set forth in *Strickland*.

IV.  Conclusion

Petitioner is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. Petitioner's motions for an evidentiary hearing and to dismiss his conviction will be **DENIED** as **MOOT**. The court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this court will **DENY** petitioner leave to proceed in

forma pauperis on appeal.  *See* Rule 24 of the Federal Rules of Appellate Procedure.  Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**.  28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Leon Jordan  
United States District Judge